So Ordered.

Dated: September 29, 2026

Katherine Maloney Perhach
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re:<br>Jason Wayne Fowler and<br>Sondra Stedron Fowler,<br>Debtors. | Case No. 25-23180-kmp<br><br>Chapter 11 |

**DECISION AND ORDER GRANTING DEBTORS' MOTION TO RESCIND APPOINTMENT OF CHAPTER 11 TRUSTEE**

Jason Fowler and Sondra Stedron Fowler (the "Debtors") ask the Court to terminate the appointment of the Chapter 11 trustee and return them to possession and management of their bankruptcy estate. For the reasons explained below, the Court concludes that the circumstances that existed when the Debtors consented to the appointment of a trustee have materially changed. The Debtors now have competent bankruptcy counsel, understand their obligations as debtors-in-possession, and have demonstrated a willingness to comply with the Bankruptcy Code, the Bankruptcy Rules, and the requirements of the United States Trustee. Under the highly unusual circumstances of this case, § 1105 of the Bankruptcy Code permits the termination of the trustee's appointment and the restoration of the Debtors as debtors-in-possession.

## <u>Background</u>

In late 2023, TransPecos Banks, SSB ("TransPecos") obtained a judgment exceeding $3 million in Texas state court against the Debtors and several affiliated entities. After obtaining the judgment, TransPecos filed a complaint in the United States District Court for the Eastern District of Wisconsin alleging that the Debtors' transfer of real property located in Fontana, Wisconsin, on Lake Geneva, to trusts benefiting their daughters was voidable under Wisconsin's Uniform Voidable Transactions Law (the "Lake Geneva Fraudulent Transfer Litigation"). TransPecos also pursued post-judgment remedies against the Debtors and the entities in Texas, including repossession and liquidation of steel collateral.

In November 2024, the Debtors sought assistance from Attorney E. Aaron Cartwright III in defending the Texas proceedings and prosecuting separate claims against TransPecos. On February 5, 2025, the Debtors and affiliated entities, through Mr. Cartwright, filed a Petition for Bill of Review in Texas state court seeking to set aside the TransPecos judgment and to obtain a new adjudication on the merits (the "Bill of Review").[1] Docket No. 233, ¶ 19, Ex. C; Docket No. 252, ¶ 21, Ex. D. On February 18, 2025, the Debtors and the entities, also through Mr. Cartwright, filed another action in Texas state court asserting that TransPecos had acted unreasonably in liquidating collateral under Article 9 of the Uniform Commercial Code (the "UCC Article 9 Action"). *See* Docket No. 252, ¶ 14, Ex. A.

By the time the Debtors filed bankruptcy in May 2025, they were defending litigation in several jurisdictions: (1) TransPecos was pursuing collection proceedings in Texas, including the appointment of a receiver; (2) TransPecos was litigating the Lake Geneva Fraudulent Transfer Litigation; (3) Creditor AS Forge was pursuing post-judgment relief in Illinois related to a judgment entered in the Northern District of Illinois in excess of $500,000; and (4) Shinsho American Corporation was also pursuing claims against the Debtors related to a judgment and fee order entered in the Southern District of Texas in excess of $13 million. The Debtors and Mr. Cartwright were unable to keep up with the discovery and other deadlines. Mr. Cartwright testified that the volume of litigation placed the parties at risk of contempt in multiple courts. Mr. Cartwright concluded that the Debtors had to file bankruptcy immediately to obtain the protection of the automatic stay.

The Debtors filed a Chapter 13 bankruptcy petition on May 30, 2025. They did so *pro se*, but on Mr. Cartwright's advice. Mr. Cartwright had no bankruptcy experience. He had never filed a bankruptcy case, had taken no bankruptcy continuing legal education, and had taken only one "theoretical" bankruptcy course in law school that did not address the "practical nature of determining which chapter to file and then making those filings and completing those schedules." He testified that he could not give the Debtors assurance concerning the bankruptcy process beyond assisting with the initial filing and schedules. He did not, however, sign or file the Debtors' bankruptcy petition or schedules.

On July 2, 2025, the Debtors filed a motion to convert their case to Chapter 11 because they exceeded the Chapter 13 debt limit and were ineligible for Chapter 13. Docket No. 38. Although Mr. Cartwright assisted the Debtors with the motion to convert, the filing did not identify him as having made a major substantive contribution, contrary to the Court's

[1] A bill of review is a unique Texas state court procedure. It permits an independent equitable proceeding to set aside a judgment that is no longer appealable or subject to challenge by a motion for new trial. *See Baker v. Goldsmith*, 582 S.W.2d 404, 406 (Tex. 1979); Tex. R. Civ. P. 329b(f). To set aside a judgment by bill of review, the petitioner must ordinarily allege and prove "(1) a meritorious defense to the cause of action alleged to support the judgment, (2) which he was prevented from making by the fraud, accident or wrongful act of the opposite party, (3) unmixed with any fault or negligence of his own." *Baker*, 582 S.W.2d at 406-07.

ghostwriting rule.[2] Mr. Cartwright formally appeared in the case on July 22, 2025. Docket No. 64. No one objected to conversion of the case to Chapter 11. The Court converted the case to Chapter 11 on July 31, 2025.

Shortly thereafter, TransPecos moved for appointment of a Chapter 11 trustee. The Debtors, through Mr. Cartwright, initially objected. Their objection argued that the appointment of a trustee is an extraordinary remedy that requires proof by clear and convincing evidence and that the Court should closely examine the facts offered in support of such relief. Docket No. 102. The objection also emphasized the additional administrative expense and delay that a trustee would cause.

The Court held a preliminary hearing on TransPecos' motion for appointment of a trustee on August 27, 2025, and scheduled an evidentiary hearing for October 9, 2025. At the August hearing, and more than a month after Mr. Cartwright had formally appeared in this case, the Court asked Mr. Cartwright whether he intended to seek employment as counsel for the Debtors under § 327 of the Bankruptcy Code. Mr. Cartwright finally filed such an application on August 29, 2025. The United States Trustee and TransPecos objected. Following a hearing on September 23, 2025, the Court denied Mr. Cartwright's employment application for several reasons, including the fact that Mr. Cartwright represented, or purported to represent, interests adverse to the Debtors' estate, including Continuous Cast Alloys, LLC, a creditor of the Debtors, and the Debtors' daughters, who were beneficiaries of the trust that received the alleged voidable transfer of the Lake Geneva house from the Debtors.

Two days after the Court denied Mr. Cartwright's employment application, the Debtors sought a continuance of the evidentiary hearing to consider TransPecos' motion for appointment of a trustee scheduled for October 9, 2025, because they were without counsel and needed time to obtain bankruptcy counsel. The motion was apparently drafted by Mr. Cartwright, though again, his assistance was not disclosed. Docket No. 146. The Court granted the continuance and rescheduled the evidentiary hearing for November 20, 2025.

On November 5, 2025, Mr. Cartwright filed a document captioned "Notice of Agreement to Appointment of Substitute Chapter 11 Trustee." Docket No. 170. The document, signed by the Debtors, stated that they had no objection to and affirmatively agreed with TransPecos' request for appointment of a Chapter 11 trustee. The evidence established that the Debtors believed appointment of a trustee was effectively required because Mr. Cartwright could not represent the estate and they had not obtained bankruptcy counsel. They also believed, based on

[2] *See* Local Rule 9010.1, "Ghostwriting Prohibited: All attorneys, whether or not the attorney of record, who make a major substantive contribution to a petition, pleading, proposed order, trial-related document, motion, memorandum, or brief that is filed with the court or is intended to be filed with the court, must be identified in the filing. No attorney may draft a document intended to be filed by an otherwise unrepresented person without complying with this Local Rule." *See* Superseded Local Rules Effective November 1, 2017, through December 31, 2025, available at https://www.wieb.uscourts.gov/local-rules.

Mr. Cartwright's advice, that the trustee would continue prosecuting their Bill of Review and their UCC Article 9 Action in Texas.

Ms. Fowler testified that the Debtors did not understand that they had a choice whether to consent to the appointment of a trustee. Mr. Cartwright testified that he believed a trustee was the only practical means of resolving the conflicts created by his representation of other parties and that his lack of bankruptcy experience made appointment of a trustee likely. He advised the Debtors that the trustee would review their Bill of Review and UCC Article 9 Action, decide the order in which to pursue them, oversee their debtor-in-possession account, examine significant transfers, and leave them with some control over their assets. He did not explain to the Debtors how the appointment of a trustee would affect their rights and authority as debtors-in-possession.

Mr. Fowler likewise testified that he understood the trustee would provide oversight and would pursue the Debtors' claims, including the Bill of Review and the UCC Article 9 Action, and would "fight for our behalf" in the Lake Geneva Fraudulent Transfer Litigation. He did not understand that the trustee could instead decide not to pursue the Bill of Review or the UCC Article 9 Action or could assume broad control over the Debtors' finances and operations. Taken together, the testimony established that the Debtors did not understand the legal consequences of consenting to the appointment of a Chapter 11 trustee.

Because the Debtors withdrew their objection to the appointment of a trustee, the Court did not conduct the scheduled evidentiary hearing on the merits of TransPecos' request and did not make findings of fact establishing "cause" for the appointment of a trustee under § 1104. Instead, based solely on the Debtors' consent, the Court entered an order granting TransPecos' motion to appoint a trustee. The United States Trustee appointed Virginia E. George as the Trustee and the Court entered an order approving the appointment of Ms. George as the Trustee on November 18, 2025.

After her appointment, the Trustee sought an order prohibiting the Debtors from using, spending, transferring, or disposing of post-petition earnings without Court approval and requiring them to deliver those earnings to the Trustee. Docket No. 193. The Debtors did not object, and the Court entered that order on December 17, 2025. Docket No. 206. That order prompted the Debtors to engage competent bankruptcy counsel. *See* Docket No. 242 at 8 n.2; Docket No. 346 ¶ 1. Thereafter, the Debtors' counsel negotiated with the Trustee over a living-expense budget. *See* Docket No. 242 at 8 n.2. These negotiations resulted in further litigation concerning the Debtors' continued use of credit cards and ultimately in an agreed monthly budget. *See* Docket No. 231 ¶¶ 6-9; Docket No. 301. Over the Debtors' objection, the Court later required the Debtors to deposit their post-petition earnings into the Trustee's account, from which the agreed monthly budget would be returned by the Trustee to the Debtors. Docket No. 339.

The Trustee also sought to consolidate litigation involving claims of the bankruptcy estate. On February 18, 2026, the United States District Court for the Eastern District of

Wisconsin entered an order substituting the Trustee for TransPecos as the plaintiff in the Lake Geneva Fraudulent Transfer Litigation and referring the case to this Court. Docket No. 228. That litigation is currently pending as *George v. Fowler et al.*, Adversary Case No. 26-2020. In the Debtors' bankruptcy case, the Trustee filed a motion to compromise seeking to reduce, reclassify, and allow TransPecos' proof of claim as an unsecured claim in the amount of $4,452,013.32 and to dismiss the Debtors' Bill of Review in Texas state court. Docket No. 233.

The Debtors, frustrated by the Trustee's control over their post-petition earnings and by her proposal to dispose of the litigation they had commenced before filing bankruptcy, moved to rescind the Trustee's appointment under § 1105 of the Bankruptcy Code. They also objected to the Trustee's proposed compromise and to TransPecos' claim. Docket Nos. 251, 253.

The Debtors initially requested that the Court vacate the Order Approving Appointment of Chapter 11 Trustee pursuant to Fed. R. Civ. P. 60(b)(1) and (5), applicable here through Fed. R. Bankr. P. 9024. Docket No. 242. They later abandoned Rule 60(b) as an independent basis for relief. The Court therefore considers only whether the Trustee's appointment should be terminated and the Debtors restored as debtors-in-possession under § 1105. The Trustee, TransPecos, and the United States Trustee all oppose the Debtors' Motion to Rescind the Appointment of the Chapter 11 Trustee.

## Analysis

Section 1105 of the Bankruptcy Code provides:

> At any time before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may terminate the trustee's appointment and restore the debtor to possession and management of the property of the estate and of the operation of the debtor's business.

The statute gives the bankruptcy court discretion to terminate a trustee's appointment. The text of § 1105 does not prescribe any fixed test for exercising that discretion. As summarized in *Collier on Bankruptcy*, relevant considerations include: (1) new evidence that potentially undercuts the rationale for appointing the trustee; (2) changed conditions making a trustee no longer in the best interests of the estate; and (3) new circumstances eliminating the reason for the trustee's appointment in the first place. *Collier on Bankruptcy* ¶ 1105.02 (Richard Levin & Henry J. Sommer eds., 16th ed.) (citing *In re Amerejuve, Inc.*, No. 14-35482, 2015 WL 2226344, at *12, 2015 Bankr. LEXIS 1496, at *37 (Bankr. S.D. Tex. Apr. 29, 2015)). Other grounds may also support termination. *Id.*

The cases applying § 1105 often ask whether the debtor is more likely to manage the bankruptcy estate properly now than when the court ordered the appointment of a trustee. *See In re Van Upp*, No. 09-31932 TEC, 2010 WL 2901634, at *2 (Bankr. N.D. Cal. July 19, 2010);

*Macco Props., Inc. v. Deeba (In re Macco Props.)*, Case No. 10-16682-NLJ, Adv. No. 11-1099, 2011 Bankr. LEXIS 5755, at *59-60 (Bankr. W.D. Okla. Sept. 7, 2011). Where the circumstances that led to appointment of a trustee remain unchanged, termination is inappropriate. *See In re Taub*, 441 B.R. 211 (Bankr. E.D.N.Y. 2010); *In re Curlew Valley Assocs.*, 14 B.R. 506, 515 (Bankr. D. Utah 1981). Conversely, where a change in circumstances eliminates the original need for a trustee, termination may be appropriate. *See In re Eastern Consol. Utils., Inc.*, 3 B.R. 591, 593 (Bankr. E.D. Pa. 1980); *In re South Montana Elec. Generation & Transmission Co-op., Inc.,* No. 11-62031-11, 2013 WL 6198217, at *9 (Bankr. D. Mont. Nov. 26, 2013).

This case presents the kind of changed circumstances contemplated by § 1105. This is not a case where the Court adjudicated allegations underlying a request for appointment of a trustee and made findings of fact establishing a basis to appoint a trustee under § 1104. Instead, the Trustee was appointed after the Debtors withdrew their objection to appointment of a trustee. When the Debtors consented to appointment of a trustee, they lacked competent bankruptcy counsel, were poorly positioned to proceed as *pro se* Chapter 11 debtors in a complex case, and relied on advice from an attorney who lacked bankruptcy experience and who could not serve as their debtor-in-possession counsel because of conflicts.

The circumstances are materially different now. The Debtors have retained experienced bankruptcy counsel who is familiar with complex cases like theirs. They have worked with counsel to amend their schedules and Statement of Financial Affairs, have addressed issues raised by the Trustee, and have demonstrated an understanding of the obligations imposed on debtors-in-possession. Both Debtors testified that they intend to follow the advice of counsel and comply with the Bankruptcy Code, the Bankruptcy Rules, and the requirements of the United States Trustee.

The circumstances of this case are closely analogous to those in *In re Eastern Consolidated Utilities*. There, the major cause of the debtor's difficulties leading to the appointment of a trustee was "the result of ill-advised legal counsel." *Eastern Consol. Utils.*, 3 B.R. at 593. After the debtor retained competent, experienced bankruptcy counsel, the court concluded that the new counsel, together with the principals' stated intention to comply with the Bankruptcy Code, made continued service of a trustee unnecessary. *Id*. The same reasoning applies here.

The Trustee and the United States Trustee identify several concerns that, in their view, demonstrate that the Debtors should not be returned to possession, including incomplete disclosures, post-petition debt incurred without Court authorization, disregard of corporate formalities, failure to file personal income tax returns since 2021, an insufficient appreciation of their responsibilities, and a willingness to place personal interests ahead of the estate. These concerns warrant consideration. They do not, however, overcome the changed circumstances established at the hearing.

First, the Debtors have worked with their new bankruptcy counsel to correct and supplement their schedules and financial disclosures. Ms. Fowler testified that she devoted substantial time to reviewing and amending the schedules with counsel. After the Trustee identified additional issues at the evidentiary hearing, the Debtors promptly worked with counsel to further amend their Statement of Financial Affairs. *See* Docket No. 356. The Trustee herself recognizes that some of the omissions were "immaterial" or "explainable." *See* Docket No. 364 ¶ 97.

Second, although the Debtors incurred post-petition debt, the evidence established that they did so before obtaining competent bankruptcy counsel. Both Debtors testified that they now understand that post-petition debt generally may not be incurred without Court authorization, except as permitted in the ordinary course of business. Their testimony reflects an understanding that was absent when they consented to the appointment of the Trustee.

Third, the Debtors acknowledge their outstanding personal tax returns and intend to file them as soon as possible. Their failure to file returns remains a matter requiring serious and prompt attention. It is not, however, a circumstance that necessarily requires continued appointment of a trustee where the Debtors are now represented by competent counsel and understand that their tax obligations must be timely addressed. Failure to timely file required tax returns or pay required post-petition taxes may constitute cause for conversion or dismissal under 11 U.S.C. § 1112(b)(4)(I), and the Debtors remain subject to that potential statutory consequence.

Finally, the Trustee's remaining concerns largely arise from the Debtor's testimony concerning their understanding of their obligations and the estate's interests. Viewed in the context of the entire record, those concerns do not establish that the Debtors remain incapable of properly managing the estate as they were when they consented to appointment of the Trustee. The evidence instead demonstrates a materially greater understanding of their fiduciary obligations and of the limits on their authority. Most importantly, they now have competent bankruptcy counsel and have testified under oath that they will follow counsel's advice and comply with the Bankruptcy Code, the Bankruptcy Rules, and the requirements of the United States Trustee.

The Court therefore concludes that the Debtors have established that they are substantially more likely to manage the estate properly now than when the Trustee was appointed. Their retention of competent bankruptcy counsel, their demonstrated efforts to correct prior disclosures, their understanding of their obligations, and their commitment to comply with the Bankruptcy Code, the Bankruptcy Rules, and requirements of the United States Trustee constitute new circumstances that eliminate the need for the Trustee's continued appointment.

The Court emphasizes that its conclusion to terminate the Trustee's appointment is not a criticism of the Trustee or her performance. To the contrary, the Trustee has performed her

duties diligently and effectively and she and her counsel have provided important, reasonable, and necessary services to the estate. Her testimony at the evidentiary hearing and her performance throughout her tenure as Trustee demonstrated a thorough and careful administration of the estate. The termination of her appointment results from changed circumstances, not from any deficiency in the Trustee's performance or in the services she has provided the estate.

Restoration of the Debtors to possession does not eliminate the statutory and fiduciary constraints applicable to debtors-in-possession. The Debtors remain subject to the reporting requirements, fiduciary duties, and other obligations imposed by the Bankruptcy Code, the Bankruptcy Rules, the requirements of the United States Trustee, and the orders of this Court. The Court may impose appropriate limitations and conditions to ensure that this case proceeds expeditiously. *See* 11 U.S.C. § 105(d)(2). Creditors and other parties in interest also retain their statutory rights, including the right to seek conversion or dismissal of this case for cause under § 1112(b).

The Court recognizes that restoration of the Debtors to possession will potentially return to them control over the estate's causes of action, including the Lake Geneva Fraudulent Transfer Litigation. That litigation concerns the Debtors' transfer of the Lake Geneva property to trusts established for the benefit of their daughters. The claims asserted in that litigation therefore implicate both an asset of the bankruptcy estate and transactions involving persons closely related to the Debtors. As debtors-in-possession, the Debtors have a fiduciary duty to preserve and, where appropriate, prosecute claims belonging to the estate. The Debtors may not use their restored control of the estate to dispose of those claims for the benefit of themselves, their daughters, or any other person inconsistent with their fiduciary duties or at the expense of the estate. Accordingly, the Debtors may not compromise, dismiss, settle, release, waive, transfer, abandon, or otherwise dispose of the Lake Geneva Fraudulent Transfer Litigation without further order of this Court following notice and an opportunity for a hearing.

The Debtors shall also take reasonable steps to preserve the Lake Geneva Fraudulent Transfer Litigation claims, including preserving relevant evidence, documents, and records, and must comply with applicable deadlines and orders, including those necessary to prevent any claim in the litigation from becoming time barred, waived, or otherwise unenforceable. The Debtors likewise shall not take, or fail to take, any action for the purpose of impairing, prejudicing, extinguishing, or rendering unenforceable the claims asserted in the Lake Geneva Fraudulent Transfer Litigation.

If the Debtors fail to prosecute the Lake Geneva Fraudulent Transfer Litigation in accordance with their statutory or fiduciary duties, TransPecos or another party in interest may seek derivative standing to prosecute those claims on behalf of the estate. *See In re Xonics Photochemical, Inc.*, 841 F.2d 198, 203 (7th Cir. 1988). In light of the history of the Lake Geneva Fraudulent Transfer Litigation, the circumstances giving rise to the Trustee's prosecution of those claims, and the fact that the litigation concerns transfers to trusts benefiting the Debtors'

daughters, the Court would give serious consideration to such a request if the evidence establishes that the Debtors have failed to fulfill their statutory or fiduciary obligations with respect to the litigation. However, nothing in this decision determines the merits of the Lake Geneva Fraudulent Transfer Litigation, the parties' respective defenses or claims, or the identity of the party that should prosecute that litigation following termination of the Trustee's appointment.

IT IS THEREFORE ORDERED: the Trustee's appointment is terminated.

IT IS FURTHER ORDERED: the Debtors are returned to possession and management of the property of the estate.

IT IS FURTHER ORDERED: the Debtors shall not compromise, dismiss, settle, release, waive, transfer, abandon, or otherwise dispose of the claims asserted in the Lake Geneva Fraudulent Transfer Litigation without further order of this Court.

IT IS FURTHER ORDERED: the Debtors shall take reasonable steps to preserve the claims asserted in the Lake Geneva Fraudulent Transfer Litigation, including preserving relevant evidence, documents, and records, and must comply with applicable deadlines and orders, including those necessary to prevent any claim in the Lake Geneva litigation from becoming time barred, waived, or otherwise unenforceable, unless otherwise ordered by this Court.

IT IS FURTHER ORDERED: the Debtors shall not take, or fail to take, any action for the purpose of impairing, prejudicing, extinguishing, or rendering unenforceable the claims asserted in the Lake Geneva Fraudulent Transfer Litigation, unless otherwise ordered by this Court.

IT IS FURTHER ORDERED: Swanson Sweet LLP shall file a final application for compensation as the attorneys for the Trustee on or before **October 30, 2026**.

#####